IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BLONDELL J.,[1] | No. 3:22-cv-1612-JR |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Blondell J. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

ECF No. 20. For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in December, 1974, plaintiff alleges disability beginning August 25, 2017, with a date last insured of June 30, 2023, due to "neck issues; shoulder issues; back; numbness from elbow to fingertips; nerve damage; can't lift right shoulder; migraines; borderline diabetic; have to roll out of bed; [and] depression." Tr. 15, 17, 91, 200-10. Her application was denied initially and upon reconsideration. Tr. 104-50. On June 17, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Derek Johnson. Tr. 35-55. On July 2, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 12-34. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had engaged in substantial gainful activity since December 15, 2020. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: "cervical spine degenerative disc disease, status post two surgeries." Tr. 18. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except:

> [S]he can never crawl or climb ladders, ropes, or scaffolds. With the dominant right upper extremity, she can occasionally push/pull, occasionally reach

2 – OPINION & ORDER

overhead, frequently reach in all other directions, and frequently handle and finger. She can tolerate occasional exposure to extreme cold and vibration. She can tolerate no exposure to hazards such as unprotected heights or moving mechanical machinery.

Tr. 21-22.

At steps four and five, the ALJ determined that the claimant was capable of performing both past relevant work as a retail clerk, dental assistant, and hospital cleaner, as well as other jobs existing in significant numbers in the national economy such as routing clerk, router, and coin machine collector. Tr. 27-29. The ALJ therefore found plaintiff not disabled from August 25, 2017, through July 2, 20221, the date of the decision. Tr. 29.

## DISCUSSION

Plaintiff argues the ALJ committed four harmful errors in his written opinion. She contends the ALJ erred by (1) improperly rejecting plaintiff's symptom testimony, (2) rejecting lay witness testimony without a germane reason for doing so, (3) improperly evaluating David Hays, M.D.'s medical opinion, and (4) relying on vocational expert testimony at steps four and five that was the product of incomplete hypotheticals. For the reasons that follow, the Court finds the ALJ erred, the errors were harmful, and reverses the ALJ's decision.

**I.    Symptom Testimony**

Plaintiff contends the ALJ erred by discrediting her testimony that pain limited her ability to manage an eight-hour workday. Pl.'s Br., ECF No. 17 at 9-12. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is

insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified at the hearing about significant pain and an inability to use her dominant right hand. For example, plaintiff shared that she "couldn't stand, sit, or lay for a long period of time," and would have "to rotate my position often" due to pain. Tr. 49, 52. The pain is so severe she cannot complete her physical therapy exercise. Tr. 50. Plaintiff described that she "can't hold anything with [her] right side, [] can't carry, [and] can't reach up to go over the stove cabinet, or on top of the refrigerator." Tr. 52. As a result, she uses her non-dominant left hand for these tasks. Tr. 52. Describing her mental health during the relevant period, plaintiff testified that she "wasn't in a good place…kind of like depression," and wasn't able to do anything for herself like pay the bills. Tr. 51-52.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 22. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, plaintiff's treatment history, and that plaintiff's daily activities conflicted with her symptom allegations. Tr. 22-24.

The objective medical evidence the ALJ cited may have been sufficient to discount plaintiff's testimony, but because the ALJ did not state his reasons with sufficient specificity, the Court remands to the ALJ for further consideration on the issue. When discounting symptom testimony, an ALJ's decision "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). In this context, that means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). When considering plaintiff's testimony, the ALJ thoroughly summarized the medical record, but failed to provide any analysis regarding how the cited medical records undermined any of plaintiff's specific allegations. *See* Tr. 18-22. This does not fulfill the Ninth Circuit's expectation that an ALJ identify which of plaintiff's statements or testimony is supposedly undermined by the record, and specifically what parts of the record undermine it. *Brown-Hunter*, 806 F.3d at 494.

Furthermore, little of the medical record the ALJ summarizes directly addresses plaintiff's allegations of debilitating pain, and her inability to work a full 8-hour day as a result.

5 – OPINION & ORDER

*See, e.g.,* Tr. 23-34 (reflecting plaintiff's consistent reports of pain, and decreased cervical range of motion due to pain). The ALJ cites medical records about plaintiff's strength and range of motion, but those do not conflict with her testimony about, for example, how her pain renders her unable to "stand, sit, or lay for a long period of time," and that she needs "to rotate [her] position often" due to pain. Tr. 49, 52. Nor do any of the medical records address her alleged depression. *Id.* Indeed, a closer look at the medical records the ALJ cites shows that the records seem to support plaintiff's testimony, rather than conflict with it. *See, e.g.,* Tr. 22 (citing Tr. 1107 as proof of strength and range of motion, but neglecting to acknowledge the same note's diagnosis of, for example, "[s]ignificantly decreased range of motion secondary to pain."). Ultimately, the ALJ's opinion paints with too broad a brush, and leaves this Court to surmise on its own which "testimony [the ALJ] found not credible" and what "particular parts of the record supporting h[is] non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to provide such clear analysis is error, the Court therefore finds the ALJ failed to give a sufficiently clear and convincing reason for discounting plaintiff's symptom testimony. On remand, the ALJ must be more explicit about what testimony is being discounted and why.

### B. Improvement with Treatment

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit holds that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Symptom improvement, however, must be weighed

within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

The ALJ also failed to provide a clear and convincing reason to discount plaintiff's symptom testimony when he noted that plaintiff benefited from treatments like acupuncture and medication. Tr. 24. When weighing a plaintiff's treatment history against her pain allegations, ALJs must take the plaintiff's specific testimony and the "overall diagnostic picture" of the record into account. *Holohan*, 246 F.3d at 1205. In the written opinion's summation of the medical record, the ALJ noted that plaintiff received beneficial treatment during the relevant period including acupuncture treatment and oxycodone. Tr. 24 (citing, e.g., Tr. 797). The ALJ did not, however, conclude that the beneficial treatment directly related to any of plaintiff's allegations. *Id.* Nor did the ALJ acknowledge that those same medical records referencing beneficial treatment recognized that plaintiff's pain was unchanged. Tr. 797. Indeed, at the hearing plaintiff testified she suffered from disabling pain *despite* the treatment she received during the relevant period. *See* Tr. 49-50 (reiterating disabling pain symptoms despite acupuncture, physical therapy, and medication treatments). Because the ALJ failed to directly tie plaintiff's treatment history to testimony it supposedly undermined and did not consider the overall diagnostic picture of plaintiff's pain, he erred in discounting plaintiff's symptom testimony due to symptom improvement.

*C. Daily Activities*

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her "own statements about daily activities." Tr. 27. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where

7 – OPINION & ORDER

the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The ALJ failed to adequately identify transferable work skills or inconsistencies between plaintiff's daily activities and symptom testimony, and therefore erred. The Ninth Circuit has instructed that a modest level of activity is not sufficient to reject subjective complaints. *Vertigan*, 260 F.3d at 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled") (quoting *Fair*, 885 F.2d at 603). The ALJ summarily referred to plaintiff's "statements about daily activities" in the written opinion, but did not specify which activities, or how those activities either transfer to work or contradict hearing testimony. Tr. 27. Such a limited discussion fails to explain "what symptom testimony [was] not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see Dodrill*, 12 F.3d at 918. The ALJ merely concluded that plaintiff's activities

"do not support a more restrictive finding." Tr. 27. This was error, and not a clear or convincing reason to discount plaintiff's subjective symptom testimony about disabling pain.

In sum, the ALJ erred in rejecting plaintiff's subjective symptom testimony because he failed to provide specific, clear, and convincing reasons as to why her testimony contradicted, or was undermined by, the objective medical record, treatment history, or her daily activities.

## II.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the

9 – OPINION & ORDER

lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

On October 21, 2019, the claimant's sister provided a third-party function report indicating the following: (1) the claimant is unable to maintain regular, continuous work due to the inability to stand for extended periods, the inability to lift her arms over her head, and pain symptoms even while lying in bed and using multiple pillows; (2) she takes extended time with personal care due to her limitations; (3) she requires multiple breaks to prepare meals and/or needs assistance from others; (4) she is unable to enjoy previous hobbies due to overwhelming pain; (5) she requires many breaks when walking and is unable to lift more than five pounds; (6) she has difficulty handling stress due to constant pain; and (7) she is unable to drive due to pain medications. Tr. 265-72.

The ALJ erred by rejecting the lay witness testimony in conclusory fashion for the same reasons he rejected plaintiff's symptom testimony. Although defendant suggests the ALJ "did not have to" consider the lay testimony, this Court still requires ALJs to provide germane reasons for dismissing lay witness testimony. *See, e.g., Nichole M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 2889777, at *8 (D. Or. Apr. 11, 2023). As noted above, the ALJ committed legal error in the consideration of plaintiff's testimony, so those same reasons cannot support the rejection of plaintiff's sister's similar allegations. This error was harmful. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Molina*, 674 F.3d at 1116 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th

Cir. 2006)). On remand, therefore, the ALJ must squarely consider the lay witness testimony and provide a germane reason supported by substantial evidence if he wishes to discount it.

### III. Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in rejecting aspects of her treating doctor David Hays, M.D.'s medical opinions. Pl. Br. at 10-15. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On June 14, 2021, the claimant's treating physician Dr. Hays, provided a medical source statement indicating the following: (1) [plaintiff] suffers from cervical radiculopathy and cervical disc disorder at C5-C6; (2) she suffers symptoms of right shoulder and neck pain, as well as

limited range of motion in the neck and right shoulder; (3) she is very limited in her ability to lift/carry; (4) she is limited to standing and/or walking for 30 minutes at one time and less than two hours in an 8-hour day; (5) she is limited to sitting for 30 minutes at one time and less than two hours in an 8-hour day; (6) her chronic neck and shoulder pain necessitates frequent position changes, including lying down or reclining; (7) she is limited in her upper extremities, as she can never reach overhead or at shoulder height, and is restricted to occasional handling, fingering, and feeling; (8) her upper extremity limitations are based on ongoing pain, weakness, and occasional numbness in her right upper extremity, which severely limits her ability to do activities that involve her right arm; (9) she is markedly limited in her ability to concentrate, persist, or maintain pace due to impairment in focus and keeping up resulting from chronic pain; (10) she would be off-task 20% of the time due to deficits in attention and concentration caused by her pain, medications, position changes, and exercises just to get some relief; (11) she would be expected to miss at least 16 hours of work per month due to pain flares especially with using the right arm; and (12) her limitations were present from August 25, 2017, through October 31, 2020. Tr. 1297-1300.

> The ALJ rejected Dr. Hays' disabling opinion, stating the following:
>
> The opinion of David Hayes, M.D. is not persuasive…This opinion, while supported by explanation, is not consistent with the record. For example, the bilateral pushing and pulling limits and "very limited" lifting and carrying limits are inconsistent with the claimant's remaining 4/5 right upper extremity strength and normal left upper extremity strength and range of motion. 1F/11; 2F/64, 120, 174, 266; 6F/80. The standing and walking limits are inconsistent with the claimant's normal gait. 2F/64; 4F/53; 6F/80. The off-task limitations are inconsistent with the claimant's normal memory (4F/30, 53), linear and logical thought process (2F/200; 4F/23; 6F/163), alertness and orientation (*see* 2F/13, 63, 141; 4F/30), and normal speech (2F/63; 4F/23). Therefore, this opinion is not persuasive.

Tr. 26

12 – OPINION & ORDER

The ALJ adequately discussed the strength of the evidence underlying Dr. Hays' lifting, pushing/pulling, left extremity, and off-task limitations and their consistency with other evidence in the record when finding them unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found these aspects of Dr. Hays' opinion inconsistent with the record because they conflicted with objective medical evidence. Tr. 26. For example, the ALJ noted findings showing minimal tenderness to palpation of the shoulder, mild to moderate findings on Plaintiff's imaging reports, but no evidence of hardware complications, good and intact grip strength, and improved numbness and paresthesia of the fingers. Tr. 24 (citing Tr. 404, 840, 849, 858, 941, 1045, 1165. The ALJ likewise considered reduced (4/5) right upper extremity strength (Tr. 409–10, 465, 629, 672, 1107) but noted that the remaining upper extremity range of motion was 75–90 degrees of forward flexion and 48 degrees of extension. Tr. 26 (citing Tr. 398, 404). In addition, plaintiff had normal left upper extremity strength and range of motion. Tr. 329, 409, 465, 611, 1107. These objective findings were inconsistent with Dr. Hays' limitations, and the ALJ adequately considered the supportability and consistency of his opinion by examining the bases for his conclusions, and discounting them for their inconsistency with the record.

The ALJ erred, however, in his consideration of Dr. Hays' proposed limitations on plaintiff's ability to stand and walk. Dr. Hays opined that plaintiff was limited to standing and/or walking for 30 minutes at one time and less than two hours in an 8-hour day, sitting for 30

minutes at one time and less than two hours in an 8-hour day, and that she needed frequent position changes, including lying down or reclining. Tr. 1297-1300. The ALJ rejected this aspect of Dr. Hays' opinion as "inconsistent with the claimant's normal gait." Tr. 26. Gait—how a person walks or moves—does not relate to *how long* a person can walk, stand, or sit. Dr. Hays explicitly linked his opinion about plaintiff's inability to walk stand or sit to her "chronic pain," and the ALJ cited no evidence that suggests this opinion was inconsistent with the record (where there is significant evidence of pain), or that the opinion lacked support. *See* Tr. 26. This was error. On remand, the ALJ must address the supportability or consistency of Dr. Hays' sitting, standing, and position-changing limitations with the record.

### IV. Remedy[2]

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir.

---

[2] Plaintiff also argues the ALJ erred at steps four and five by concluding she could perform past relevant work and relying on hypotheticals posed to the VE that did not reflect all of her limitations. *See* Pl. Br., ECF No. 12 at 19-20. Because the Court is remanding this case for the ALJ to reconsider plaintiff's testimony, lay witness testimony, and aspects of Dr. Hays' medical opinion, the ALJ will need to formulate a new RFC and conduct a new analysis at steps four and five. For that reason, plaintiff's claim of error at steps four and five is moot and need not be considered at this time.

2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject plaintiff's subjective symptom testimony, and by failing to support the decision to discount lay witness testimony and aspects of Dr. Hays' medical opinion with substantial evidence. The record is still ambiguous, however, concerning whether plaintiff's pain rendered her totally disabled during the relevant period. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). The Court therefore remands for further proceedings so that the ALJ may adequately evaluate plaintiff's testimony, the lay testimony, and Dr. Hays' opinion, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

DATED: August 26, 2024

/s/ Jolie A. Russo
_____
Jolie A. Russo
United States Magistrate Judge